IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN PAYNTON                    :
                                :
    v.                          :        CIVIL ACTION NO. 13-6373
                                :
SPUDS, LLC                      :

Gerald Austin McHugh, J.                                    July 9, 2014

## MEMORANDUM OPINION

    This is an action for personal injuries arising out of an altercation that occurred on November 6, 2011, in close proximity to Spuds restaurant on Main Street in Kutztown, Pennsylvania. The events in question occurred during Homecoming weekend at Kutztown University. The issue presented is whether the potential liability of a property owner invariably stops at the edge of its property line, or whether, under appropriate circumstances, liability can extend further.

    Plaintiff Ryan Paynton alleges that he was physically attacked by a patron of Spuds restaurant, suffering a traumatic brain injury and permanent damage to his right eye. Defendants include Spuds, its owner, and individuals involved in the altercation. Spuds and its owner, defendant Jeffrey Shuman, originally filed a motion to dismiss the complaint. Because the incident in question was the subject of a criminal prosecution, there is a more detailed factual record than usually exists at the outset of civil litigation, including a video surveillance tape from inside Spuds capturing some of the events at issue in this case. By citing to that material, defendants have effectively converted their motion to one for summary judgment pursuant to Federal Rule of Civil Procedure 56. I will treat it as such, and apply the classic test set forth in

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Defendants contend that under Pennsylvania law the liability of a business owner is strictly limited to circumstances where an injury occurs on land that it owns. Citing to the video surveillance evidence and testimony in the criminal case, they argue that there is no dispute that the plaintiff was injured after he had left their premises, and indeed not until he was further down the street some two storefronts away. Having reviewed the extensive factual record presented by the parties, I am not convinced that Pennsylvania courts would necessarily deny recovery under these facts, and, at a minimum, plaintiff should be granted the right to conduct discovery. Accordingly, defendants' Motion for Summary Judgment is denied.

In the broad outlines of their argument, defendants are certainly correct. Pennsylvania has adopted section 344 of the Restatement (Second) of Torts. *Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968). Under the literal terms of section 344, a possessor of land who holds it open to the public for business purposes is liable for injuries to members of the public "while they are upon the land for such purpose," which plaintiff no longer was when he suffered injury. Defendants are equally correct that the Pennsylvania precedent cited by plaintiff, e.g. *Murphy v. Penn Fruit Co.*, 418 A.2d 480, 483 (Pa. Super. Ct. 1980), does not support recovery. In each of the cases plaintiff cites, although the incident in question took place outdoors, it nonetheless occurred on land such as parking lots also under the defendant's control. I am nonetheless hesitant to enter summary judgment, because none of the precedent cited by defendants squarely addresses the factual circumstances alleged here.

Plaintiff's contention is that the sequence of events that led to his injuries began **inside** Spuds, where he and his companions were subjected to threatening behavior leading them to feel

unsafe and to depart. During the related criminal trial, plaintiff testified that he "didn't want any harm," and "just want [ed] to get out of there." Brief of Plaintiff Ryan Paynton in Opposition to the Motion for Summary Judgment, Exhibit "B" 43:16–21. Plaintiff further testified: "So right then and there I saw the kids who I thought were tormenting the ladies actually yelling stuff, not toward me or anything at that point, and I was like, you know, it looks like trouble, let's get out of here and go back to my house." *Id*., 42:10-14. At another point, the plaintiff testified: "and I remembered seeing him turn with the girls to kind of face them away from the guys to try to get them away, like trouble—or making anything become a problem and when she did that, I gathered up the troops I guess you could say, and I said, guys let's get out of here." *Id*., 42:18-22.

     Plaintiff further contends that the conduct of his assailants inside Spuds was threatening enough to rise to the level of an assault and that the battery that occurred when they followed him outside the door was a continuation of a sequence of events that Spuds allowed to escalate under circumstances where it should have recognized and guarded against a risk to its patrons. Beyond that, plaintiff raises the possibility that Spuds employees might have either encouraged, found humor in, or condoned harassment inside the restaurant based upon one plausible interpretation of the surveillance videotape. As with most surveillance footage, the video images are not accompanied with sound, leading plaintiff to argue that discovery is necessary in order to adequately interpret the events of that night. Having reviewed the video, I agree that it is inconclusive. Spuds employees can be seen on the videotape, perhaps seeking to intervene in the situation, or perhaps, by plaintiff's view, exacerbating the situation. Again, by plaintiff's reckoning, Spuds employees can be seen "smiling and conversing" with one of the assailants. Surveillance Video, timed entry 2:34:10–12. Finally, plaintiff attaches an affidavit summarizing

prospective testimony that Spuds employees stood by as the assailants followed plaintiff and his companions out the door, even as another patron attempted to stop them.

Plaintiff offers further observations in support of his theory that Spuds was a business that could give rise to particular risks of unlawful behavior. Although Spuds does not have a liquor license, it is situated within a neighborhood where there are many bars, and at least in some instances Spuds seems to have a targeted a "late night-last call" clientele by advertising on social media such as Facebook: "Don't forget to come get some Spuds after dollar drinks tonight! We are open until 3 AM!" Brief in Opposition, Exhibit "C." A security expert retained by the plaintiff, John Dowling, has submitted a report in opposition to the motion, observing that in the vicinity of Spuds, both bars and restaurants not serving alcoholic beverages staying open late night hired security personnel. Brief in Opposition, Exhibit E. Dowling reviewed the transcript of the related criminal trial, the surveillance video, and police interviews with witnesses. He is prepared to opine that the conduct of Spuds employees in apparently laughing with the defendants while they were being abusive toward plaintiff's female companions created an atmosphere where an altercation could occur and "destroyed any opportunity to assert authority over the defendants." *Id*., Paragraph 9. It is Mr. Dowling's opinion that Spuds employees should have intervened, forced the assailants to leave, and "either called the police or threatened to call the police in an attempt to restore order." *Id*., Paragraph 11.

Finally, plaintiff observes that the assault occurred during Homecoming Weekend at Kutztown University, an event which called for vigilance and heightened security, as evidenced by statistics from the Kutztown Police Department showing more than 20 incidents requiring police intervention that night, more than half of which took place within two blocks of Spuds.

Against this factual background, where there is a potential nexus between events that occurred on defendants' premises and a subsequent assault that purportedly occurred in an unbroken chain of events almost immediately outside its door, I am not persuaded that Spuds owed no duty as a matter of law. The violent encounter between plaintiff and his assailants on the sidewalk outside might credibly be related to events occurring inside Spuds, particularly if the jury believes plaintiff's testimony that he departed from Spuds because of concern for his safety. In reaching this result at this preliminary stage, I place significant weight on the nature of Spuds' business, that is, marketing itself as a destination for young people after a night of consuming alcohol at nearby bars.

Defendants rely too heavily on the literal terms of the Restatement. If the injury-producing moment outside a business is in fact the culmination of a series of events that began inside, the outcome of the case should turn on something less artificial than the location of the property line. As the Pennsylvania Supreme Court has cautioned:

> Even where this Court has "adopted" a section of the Restatement as the law of Pennsylvania, the language is not to be considered controlling in the manner of a statute. Such precepts, though they may govern large numbers of cases, are nothing other than common law pronouncements by the courts; their validity depends solely on the reasoning that supports them. Where the facts of a case demonstrate that the rule outruns the reason, the court has the power, indeed the obligation, to refuse to apply the rule, a power for the most part unavailable where the rule is legislatively ordained…. In the face of contrary arguments as to why the rule should not apply in a given case, it is not enough to say merely that the rule as stated contains no exceptions.

*Coyle by Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1385 (Pa. 1991).

No appellate decisions in Pennsylvania directly address the facts of this case. Defendants rely upon two trial court decisions, neither of which sheds particular light on the circumstances here. In *Ogozalek v. Goodfield*, 20 Pa. D. & C.4th 177, 183 (Pa. Lackawanna Ct. 1993), plaintiff had gone to a local convenience store, and was confronted by a group of youths

congregating outside, who confronted him with insults, and then followed him up the street and assaulted him. Aside from loitering outside, there was nothing to connect the assailants to the defendant's business. *Id.* In particular, there was no evidence that there had been an encounter inside between the plaintiff and his assailants. *Id*. Such is hardly the case here.

*Morrison v. Molly Maguire's Pub*, WL 25318233 (Pa.Com.Pl), provides even less support for defendants' position. There, the assailants ultimately involved in injuring the plaintiff had actually been ejected from a bar for causing a disturbance. *Id.* The plaintiff lingered until closing time, and upon leaving the defendants' establishment, detoured away from his parked car to gape at a nearby fistfight involving one of the patrons who had been ejected, resulting in his being struck and injured. *Id.* It was clear to the court that the defendant bar had attempted to protect its patrons, and that the plaintiff had put himself in harm's way after leaving. *Id.* There was no allegation of any interaction between plaintiff and his assailants inside the bar, making the later assault totally unrelated. *Id.*

Plaintiff, in contrast, offers a series of appellate decisions from other jurisdictions, some relying upon section 344 of the Restatement, and some relying upon general principles of common law, upholding liability where an incident began inside of an establishment and then spread outside. *Regan v. Denbar, Inc.*, 514 N.W.2d 751, 753 (Iowa Ct. App. 1994); *Ventresco v. Gokvlesh Convenience Inc.*, 723 A.2d 1250, 1252 (N.J. Super. Ct. App. Div. 1999); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1149 (7th Cir. 2010). These decisions appear to recognize a category of "spillover" cases, where there is a cascade of events involving conduct that occurs both on and off the defendant's land. Given this record, buttressed by this appellate precedent, I am convinced that defendants' motion cannot be granted as this stage.

I would reach the same result if the Third Restatement of Torts were held to apply. Preliminarily, I would note that in my view, federal courts should approach predictions about Pennsylvania's adoption of specific provisions of the Restatement (Third) with caution. In general, Pennsylvania is considered a "Restatement jurisdiction." However, even as to the Restatement (Second) of Torts, Pennsylvania did not automatically adopt every provision. *E.g. Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 843 (Pa. 2009); *Glick v. Martin & Mohler, Inc.*, 535 A.2d 626, 629 (Pa. Super. Ct. 1987). With respect to the Restatement (Third) of Property, the Pennsylvania Superior Court has already expressly declined to adopt one of its provisions. *E,g, McNaughton Properties, LP v. Barr*, 981 A.2d 222, 227 (Pa. Super. Ct. 2009). The Court of Appeals has twice predicted that Pennsylvania will adopt Sections 1 and 2 of the Restatement (Third) on Product Liability. *See Covell v. Bell Sports, Inc.*, 651 F.3d 357, 363-64 (3d Cir. 2011); *see also Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45 (3d Cir. 2009). It has also directed district court judges to follow its precepts. *Sikkelee v. Precision Airmotive Corp.*, 2012 WL 5077571 (3d Cir 2012). But the fact remains that no Pennsylvania court has yet adopted either of those sections.

Assuming, however, that the Restatement (Third) of Torts were to apply, as held by *D'Alessandro v. Cavanaugh's River Deck*, 2013 WL 2357496 (E.D. Pa. 2013), defendants' position would be correspondingly weaker. Section 54 of the Third Restatement provides:

> The possessor of land has a duty of reasonable care for artificial conditions or conduct **on** the land that poses a risk of physical harm to persons or property **not on** the land.          (Emphasis added)

In essence, the Third Restatement appears to recognize and endorse the very principles of expanded liability encompassed in the appellate decisions on which plaintiff relies . Here, plaintiff alleges that Spuds' failure to exercise reasonable care with respect to conduct inside the

restaurant created a risk of physical injury to him following his departure. Such a theory of liability would appear to fit squarely within the first subparagraph of Section 54, and entitle plaintiff to proceed with discovery even if the Third Restatement is controlling.

     Accordingly, the motion is denied.

                                              /s/ Gerald Austin McHugh
                                  United States District Court Judge